# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TENNESSEE
# NORTHEASTERN DIVISION AT GREENEVILLE

| | |
|---|---|
| George Williams, | Civil Action No.: 2:20-cv-00014-JRG-CRW |
| Plaintiff, | Judge Greer |
| v. | |
| | Magistrate Judge Wyrick |
| BMW of North America, LLC, | |
| | JURY DEMAND |
| Defendant. | |

## MEMORANDUM OF LAW IN OPPOSITION TO A MOTION TO DISMISS

Plaintiff George Williams, by and through undersigned counsel, hereby submits this Memorandum of Law in Opposition of Defendant BMW of North America, LLC's ("BMW"), Motion to Dismiss.[1]

## FACTUAL ALLEGATIONS

Plaintiff purchased a BMW vehicle, a 2014 BMW 750Li (the "Vehicle") with a defective "N63" engine, a defect which Defendant concealed. (Complaint ("Compl.") ¶¶2-5). The engine contains a manufacturing defect that causes the car to consume an excessive amount of engine oil in between Defendant's recommended oil change intervals. (Compl. ¶32). Engine oil is "an essential lubricant for the moving parts in internal combustion engines" which decreases heat caused by friction, reduces wear on the engine and serves important cleaning and sealing functions in the engine; Plaintiff's vehicle needs the proper amount of engine oil in order to function safely. (*Id.*, ¶61). Because of the defect in Plaintiff's car, the engine and components are more likely to "prematurely fail and need frequent replacement." (*Id.*, ¶62).

---

[1] Plaintiff withdraws the following causes of action: Breach of Implied Warranty of Merchantability (Count II) and Fraudulent Concealment (Count V). Plaintiff does not withdraw his claim that applicable statutes of limitations are tolled under a fraudulent concealment doctrine.

Defendant knew about the defect as early as 2008 and at all relevant times, and well before Plaintiff learned of the defect, as a result of sources not available to Plaintiff, including pre-release testing data, durability testing, early consumer complaints about the oil consumption defect, testing conducted in response to those complaints, aggregate data from Defendant's dealers including repair orders and high warranty reimbursement rates, and other internal sources. (*Id*., ¶¶5, 64). Defendant also knew of the defect because of BMW owners' public online complaints. (*Id*., ¶¶42-45). Furthermore, as is apparent from the public record of one such case, Defendant was well aware of N63 engine problems:

> Plaintiff is in posession [sic] of many reports created by Mr. Murray that refer to N63 engine defects but were not produced in McDonald. Attached as **Exhibit 17** is a true and correct copy of such reports, with certain relevant portions highlighted [sic]. As one example, a 2013 report from Mr. Murray describes: "***Customer complains that the low engine oil level message appears while driving resulting in repeat visits the dealer for top up***." (Tabesh Reply Decl. Ex. 12 at 21.) On the same page, Mr. Murray identifies the problem to BMW of North America, LLC's parent company, BMW AG: "***AG - This is a growing problem this engine (N63T***3***). This is a severe customer annoyance causing unscheduled visits to the dealer for engine oil topping. Some situations have resulted in the repurchase of the vehicle***." (*Id.*) Likewise, a 2010 report refers in its subject line to "***N63 Rough Running, Burnt Oil Smell, Crankcase Ventilation Hose Leaking Engine Oil or Vapor***." (*Id.* at 1.) The report further describes an attachment, addressed to "AG," *i.e.*, BMW AG – BMW of North America's parent company in Germany, as follows: "***Attached is a zip file with Warranty Data, one file (unfiltered) contains 119 cases of the parts associated to this system being replaced for some failure. The 2nd file (filtered) contains 43 warranty claims where one of these parts was claimed for leaking.***" (*Id.* at 2.)

(Compl. ¶5).

The amount of oil Plaintiff's car burned is not normal and does not occur in other vehicles. In fact, a Consumer Reports study looking at 498,900 vehicles across several makes and models for complaints about engine oil consumption, found that Defendant's N63 engine was included on four of the five most defective vehicles. (Id., ¶¶39-41). Moreover, BMW publicly acknowledged the issue but failed to properly address and fix it. Indeed, BMW issued Technical Service Bulletins

2

("TSBs") to its dealerships concerning the problem, (*Id.*, ¶¶47-54), however rather than address the underlying cause of the excessive engine oil consumption – a defect with the N63 engines – BMW instead "recommended that its service technicians simply add more engine oil to respond to consumer complaints." (*Id.*, ¶50). For instance, one of BMW's TSBs from 2013 "instructed service technicians to add two quarts of engine oil to N63 vehicles when the vehicles instruct owners to only add one additional quart of oil." (*Id.*, ¶49). This measure did not address the underlying defect but "it likely reduced the number of complaints because the engine oil level in the subject vehicles would now be overfilled," however that condition "can cause the engine oil to become aeriated, resulting in potential oil starvation and reduced oil pressure." (*Id.*, ¶50). In addition, the TSBs now claimed that it was normal for N63 engines to consume up to one quart of engine oil per 750 miles; but given that BMW initially represented that N63 vehicles should have oil changes performed every 15,000 miles, this 'normal' rate of consumption would result in vehicles consuming dozens of quarts of engine oil in between BMW's recommended oil change intervals. (*Id.*, ¶¶51-53). Further, in 2014 BMW launched a N63 "Customer Care Package" however this measure also masked rather than fixed the underlying defect with the N63 engines. (*Id.*, ¶¶56-58).

Plaintiff complained to Rick Hill BMW in Kingsport, Tennessee, BMW's authorized dealer ("Rick Hill BMW"), throughout the warranty period, that his car consumed an excessive amount of engine oil. (*Id.*, ¶¶2-3, 17). Defendant, despite knowing of the defect and despite being given an opportunity to cure the defect, refused to repair it and instead claimed that excessive oil consumption was "normal" and did not warrant any repairs. (*Id.*, ¶¶3-4, 18).

Since Defendant's authorized dealership refused to repair Plaintiff's car, Plaintiff has been forced to add additional engine oil to his car in between Defendant's recommended oil change intervals in order to prevent engine failure. (*Id.*, ¶¶2, 19, 33). Plaintiff would not have purchased his

3

car "had he known, prior to the time of purchase, that he would be required to regularly purchase and add large volumes of engine oil to the subject vehicle in order to prevent the subject vehicle's engine from failing." (*Id.*, ¶71). The excessive oil consumption is a safety concern "because it prevents the engine from maintaining the proper level of engine oil, and causes voluminous oil consumption that cannot be reasonably anticipated or predicted." (*Id.*, ¶63). Aside from the increased service visits and maintenance costs, and increased risk of engine failure, the excessive oil consumption also has also greatly diminished the value of Plaintiff's vehicle. (*Id.*, ¶¶21, 67, 69, 112, 121).

Plaintiff's claims should not be dismissed because the Complaint contains factual allegations sufficient to state claims for relief that are plausible on their face.

## ARGUMENT

### I. PLAINTIFF STATES A CLAIM FOR BREACH OF TCPA[2]

Defendant claims Plaintiff failed to state a claim for breach of the Tennessee Consumer Protection Act, Tenn. Code Ann. § 47-18-101, *et seq.* ("TCPA"). To state a claim under the Tennessee Consumer Protection Act, a plaintiff "must show two things: (1) that the defendant engaged in an unfair or deceptive act or practice" and (2) that the plaintiff suffered an ascertainable loss of money or property as a result. *Pagliara v. Johnston Barton Proctor & Rose, LLP*, 708 F.3d 813, 819 (6th Cir. 2013) (internal citations and quotation marks omitted).

Defendant's TCPA arguments lack merit.[3] Plaintiff alleged sufficient factual allegations to state a claim for relief under the TCPA and sufficiently pleads breach of Tenn. Code Ann. § 47-18-

---

[2] Plaintiff withdraws his claim that Defendant breached Tenn. Code Ann. §§ 47-18-104(b)(21) and (b)(23).

[3] Other courts where Defendant filed similar motions to dismiss consumer protection act claims agree. *See Nyarko, et al v. BMW of N. Am., LLC*, No. 1:18-cv-03618-RDB, 2020 WL 1491361, *6-7 (D. Md. Mar. 27, 2020) (plaintiffs have sufficiently pled breach of Maryland Consumer Protection Act); *Shumakh et al v. BMW of North America, LLC et al*, 1:18-cv-07168-MKB-CLP (S.D.N.Y. Mar. 20, 2020) (Dkt. #19) (denying motion to dismiss where defendant argued plaintiffs failed to state a claim under New York law that bars unfair and deceptive trade practices); *O'Connor v. BMW of N. Am., LLC*, No. 18-CV-03190-CMA-STV, 2020 WL 1303285, at *6 (D. Colo. Mar. 19, 2020) (holding consumer who purchased his BMW in Illinois may bring claim for breach of Colorado Consumer Protection Act where harm occurred in Colorado); *Harris et al., v. BMW of North America, LLC*, 4:19-cv-00016-ALM, 2019 WL 4861379 (E.D.

4

104(a). Plaintiff alleges that "BMW had a duty to disclose the oil consumption defect and the associated out-of-pocket repair costs since the defect poses an unreasonable safety hazard, and because BMW had exclusive knowledge or access to material facts about N63 vehicles and engines, not known or reasonably discoverable by consumers," but that Defendant nonetheless "failed to disclose the defective nature of the subject vehicle and its engine to Plaintiff at the time of purchase and thereafter." (Compl. ¶¶46, 65, 123). Plaintiff alleges Defendant knew about the defect as early as 2008 and at all relevant times, and well before Plaintiff learned of the defect, as a result of sources not available to Plaintiff, including pre-release testing data, durability testing, early consumer complaints about the oil consumption defect, testing conducted in response to those complaints, aggregate data from Defendant's dealers including dealer repair orders and high warranty reimbursement rates, and other internal sources. (*Id*., ¶¶5, 64). Plaintiff alleges Defendant's engineer, Michael Murray, compiled reports as early as 2010 and 2013 that included "Customer complains that the low engine oil level message appears while driving resulting in repeat visits the dealer for top up," and that Mr. Murray identified and reported the problem to BMW of North America, LLC's parent company, BMW AG: "AG - This is a growing problem this engine (N63T3). This is a severe customer annoyance causing unscheduled visits to the dealer for engine oil topping. Some situations have resulted in the repurchase of the vehicle." (*Id*., ¶5).

Moreover, Plaintiff alleges BMW publicly acknowledged the issue but failed to properly address and fix it. Rather than address the underlying cause of the excessive engine oil consumption – a defect with the N63 engines – BMW instead "recommended that its service technicians simply

---

Tex. Oct. 2, 2019) (Doc. No. 24) (plaintiffs plausibly pled violation of Texas Deceptive Trade Practices Act for failure to disclose); *Rivera et al., v. BMW of North America, LLC,* 2:19-cv-00007-D-BR (N.D. Tex. March 14, 2019) (Doc. No. 43) (dismissing misrepresentation but not omission Deceptive Trade Practices Act claims); *Torres et al. v. BMW of North America, LLC,* No. 3:19-cv-00087-JD (N.D. Cal., Aug. 16, 2019) (Doc. No. 41) (denying motion to dismiss where defendant argued plaintiffs failed to state a claim under California law that bars unfair and deceptive trade practices).

add more engine oil to respond to consumer complaints." (*Id*., ¶50). This measure did not address the underlying defect but "it likely reduced the number of complaints because the engine oil level in the subject vehicles would now be overfilled." (*Id*.). In addition, the TSBs now claimed that it was normal for N63 engines to consume up to one quart of engine oil per 750 miles; but given that BMW initially represented that N63 vehicles should have oil changes performed every 15,000 miles, this 'normal' rate of consumption would result in vehicles consuming dozens of quarts of engine oil *in between* BMW's recommended oil change intervals. (*Id*., ¶¶51-53). Further, in 2014 BMW launched a N63 "Customer Care Package" however this measure also masked rather than fixed the underlying defect with the N63 engines. (*Id*., ¶¶56-58).

In addition, Plaintiff pleads that when he observed the symptoms of the defect, i.e., excessive oil consumption, and presented his car to BMW's authorized dealer for repair, Defendant, through its dealer, claimed that the excessive engine oil consumption was actually "normal" and not the product of a defect and thus did not warrant any repairs. (*Id*., ¶¶2-19, 122-123). These misrepresentations and omissions that the Vehicle was defect-free and that the Vehicle's excessive engine oil consumption was not the symptom of a defect and, therefore, does not merit a repair under BMW's warranty, constitute unfair and deceptive acts and practices under the TCPA.[4]

Similarly, Defendant violated Tenn. Code Ann. §§ 47-18-104(b)(5) and (b)(7) by misrepresenting that the Vehicle has characteristics, standard, or quality which in truth it does not have. Defendant's new TSB now claimed that it was normal for N63 engines to consume up to one quart of engine oil per 750 miles; but given that BMW initially represented that N63 vehicles should have oil changes performed every 15,000 miles, this 'normal' rate of consumption would result in

---

[4] *See, e.g., Smith v. Nissan N. Am., Inc.*, No. 2:18-CV-02382-CGC, 2018 WL 4691612, at *5 (W.D. Tenn. Sept. 27, 2018) (motion to dismiss TCPA claim denied where consumer sufficiently alleged defendant misrepresented that the vehicle was free of nonconformities where the vehicle had serious defects); *Amondson v. Merryfield*, No. 1:18-CV-263, 2019 WL 7563529, at *5-6 (E.D. Tenn. May 22, 2019) (denying motion to dismiss TCPA claim where complaint sufficiently alleged that defendant engaged in deceptive or unfair acts); *ADT Sec. Servs., Inc. v. Alarm Co., LLC*, 2007 WL 9710291, at *13 (W.D. Tenn. Jan. 30, 2007) (same).

6

vehicles consuming dozens of quarts of engine oil *in between* BMW's recommended oil change intervals. (*Id.*, ¶¶52-54). Additionally, Plaintiff pleads his car required him to add about one quart of oil about every 750 miles throughout the warranty period and well before the Defendant's recommended oil change intervals. (*Id.*, ¶¶16, 53). Yet, when Plaintiff observed the symptoms of the defect, i.e., excessive oil consumption, and presented his car to BMW's authorized dealer for repair, Defendant, through its dealer, claimed that the excessive engine oil consumption was actually normal and not the product of a defect and thus did not warrant any repairs. (*Id.*, ¶18). Again, BMW made these representations despite knowing that the oil consumption was caused by a defect in the N63 engines. (*Id.*, ¶¶5, 42-53). Therefore, Defendant's failure to disclose and/or concealing the defective nature of the N63 engine from Plaintiff violated the TCPA, as Defendant represented that the Vehicle and its engine had characteristics and benefits that it does not have, and represented that the Vehicle and its engine was of a particular standard, quality, or grade when it was of another. (*Id.*, ¶122-123).

For these very reasons, BMW also violated Tenn. Code Ann. § 47-18-104(b)(19) by representing that its "guarantee or warranty confers or involves rights or remedies which it does not have." When Plaintiff sought repair for excessive engine oil consumption pursuant to BMW's warranty under which BMW promised to repair original components found to be defective in material or workmanship, including the Vehicle's engine, BMW claimed such excessive oil consumption was "normal" and refused a repair. (Compl., ¶¶17-18, 23-29, 105). Defendant's refusal to repair the Vehicle's engine under its warranty constitutes a violation of the TCPA.

Finally, Plaintiff pleads that he suffered an ascertainable loss. By relying on Defendant's omission and concealment of the defect, Plaintiff was damaged to the extent he purchased vehicle he otherwise would not have purchased, or paid more money for the vehicle than he otherwise would

7

have paid. (Compl. ¶¶7, 71, 111, 126). In addition, Plaintiff relied on Defendant's and its dealer's representations that the oil consumption was normal and did not warrant or require any repairs. Specifically, after being advised of the same and not offered any repairs, Plaintiff was required to purchase and add more engine oil into his un-repaired car in between Defendant's recommended oil change intervals to avoid engine failure. Plaintiff suffered damages in the form additional maintenance costs (including but not limited to the cost of engine oil purchases) and to the extent the unrepaired defect placed the vehicle at an increased risk of engine failure and otherwise caused damage to the vehicle itself. (*Id.*, ¶¶19-21, 67, 120). For the foregoing reasons, Plaintiff has stated a claim for relief under TCPA.

## II. COMPLAINT COMPLIES WITH FED. R. CIV. P. 8

Complaint complies with Fed. R. Civ. P. 8 and Defendant's motion to dismiss the Complaint on this basis must be denied. To survive a motion to dismiss, Plaintiff needs to plead sufficient factual matter to state a claim to relief that is plausible on its face. *El-Hallani v. Huntington Nat. Bank*, 623 F. App'x 730, 734 (6th Cir. 2015). Although this standard does not require detailed factual allegations, it certainly does not prohibit such. Moreover, "naked assertions devoid of further factual enhancement contribute nothing to the sufficiency of the complaint." *SFS Check, LLC v. First Bank of Delaware*, 774 F.3d 351, 355 (6th Cir. 2014) (internal quotations marks and citations omitted).

BMW complains Plaintiff's allegations are neither short nor plain. BMW is incorrect. To meet his burden under *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007), Plaintiff pleads enhanced factual allegations to describe N63 engine oil consumption defect, sources of BMW's knowledge of the defect, and steps BMW took to conceal the defect and misrepresent its nature. These allegations are necessary to support Plaintiff's claim that he should be awarded treble

8

Case 2:20-cv-00014-JRG-CRW   Document 16   Filed 04/09/20   Page 8 of 10   PageID #: 78

damages because Defendant intentionally concealed and failed to disclose engine defect, and that applicable statutes of limitations have been tolled under various doctrines, including due to BMW's fraudulent concealment. Finally, as evidenced by the answers BMW filed in response to substantially the same complaints in numerous actions across the country,[5] BMW is fully capable of answering the Complaint in a "just, speedy, [and] inexpensive" fashion. Defendant's motion to dismiss should be denied.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendant's motion to dismiss.

Dated: April 9, 2020

Respectfully submitted,

By: /s/ *Susan S. Lafferty*

Susan S. Lafferty BPR # 025961
Lafferty Law Firm, Inc.
1321 Murfreesboro Pike, Suite 521
Nashville, TN 37217
Telephone: (615) 878-1926
Facsimile: (615) 472-7852
*Attorneys for Plaintiff*

---

[5] *See Carroll v. BMW of North America, LLC et al*, 1:19-cv-00224-JMS-TAB (S.D. Ind. Apr. 3, 2020) (Dkt. No. 89); *O'Connor v. BMW of N. Am., LLC*, No. 18-CV-03190-CMA-STV (D. Colo. Apr. 4, 2020) (Dkt. No. 59); *Moore et al v. BMW of N. Am., LLC*, No. 1:18-cv-05169-JPB (N.D. Ga. Mar. 20, 2020) (Dkt. No. 37); *Harris et al v. BMW of N. Am., LLC*, No. 4:19-cv-00016-ALM (E.D. Tex. Mar. 2, 2020) (Dkt. No. 32); *Grover et al. v. BMW of North America, LLC*, 1:19-cv-00012-SL (N.D. Ohio Feb. 11, 2020) (Dkt. No. 29); *Schneider et al. v. BMW of North America, LLC*, 1:18-cv-12239-IT (D. Mass. Dec. 6, 2019) (Dkt. No. 60); *McNab v. BMW of North America, LLC*, No. 19-CVS-004673 (N.C. Super. Mar. 2, 2020); *Jones v. BMW of North America, LLC*, No. 20-0061-C26 (Tex. Dist. Feb. 28, 2020).

## CERTIFICATE OF SERVICE

I hereby certify that on April 9, 2020, a true and correct copy of the foregoing Memorandum of Law in Opposition of Defendant's Motion to Dismiss has been served on counsel for the parties in interest herein by operation of the Court's electronic case filing system:

Ryan N. Clark, Esq.
LEWIS, THOMASON, KING, KRIEG & WALDROP, P.C.
424 Church Street, Suite 2500
Post Office Box 198615
Nashville, TN 37219

                                              /s/ Susan S. Lafferty
                                              Susan S. Lafferty