UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | |
|---|---|
| GEORGE WILLIAMS, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 2:20-CV-00014-JRG-CRW |
| BMW OF NORTH AMERICA, LLC, | ) ) ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant's Motion to Dismiss [Doc. 12], Defendant's Memorandum of Law in Support [Doc. 13], Plaintiff's Response [Doc. 16], and Defendant's Reply [Doc. 18]. For the reasons herein, the Court will grant Defendant's motion in part and deny it in part.

### I. BACKGROUND

Plaintiff George Williams alleges that in 2016 he purchased a 2014 BMW 750Li from Rick Hill BMW in Kingsport, Tennessee—an authorized dealer of Defendant BMW of North American, LLC ("BMW")—for about $59,000, only to discover afterwards that it "consumed an excessive amount of engine oil." [Compl., Doc. 1, ¶¶ 14–17]. He maintains that he has had to "regularly add[] quarts of oil to his car *in between* oil changes" to prevent the engine—known as the "N63," a "large, high-performance engine [that] was designed to be BMW's next generation V8," [*id.* ¶ 33]—from failing, [*id.* ¶¶ 2, 19]. He alleges that the N63 is defective and that it is, in fact, "widely known" as defective, [*id.* ¶ 36], citing several technical service bulletins that BMW issued to address complaints of excessive oil consumption[1] and the filing of at least one other

---
[1] Mr. Williams alleges that, according to one of BMW's technical service bulletins, "the N63 vehicles would consume nearly 20 quarts of engine oil between the recommended 15,000-mile oil service intervals." [Compl. ¶ 53].

lawsuit in federal district court, [*id.* ¶¶ 5, 47].[2] According to Mr. Williams, BMW knew that the N63 was defective as early as 2008, having learned of its excessive oil consumption from "pre-release testing data, durability testing, [and] early consumer complaints." [*Id.* ¶ 64]. But BMW concealed its knowledge of the defect, Mr. Williams alleges, not only when he purchased the vehicle in 2014 but also when he later presented the vehicle to the dealer with complaints about its oil consumption. [*Id.* ¶¶ 3, 4].[3]

Mr. Williams claims that BMW has "neglected, failed, refused or otherwise been unable to repair" the engine, [*id.* ¶ 68], despite the fact that the vehicle was under a four-year/50,000-mile limited warranty, in which BMW agreed to repair or replace defective parts. [*Id.* ¶¶ 3, 18, 23, 24, 26]. According to Mr. Williams, his vehicle's excessive oil consumption has required him to pay for additional service visits and maintenance costs, obtain BMW-approved engine oil, and refrain from traveling long distances. [*Id.* ¶ 67]. He also maintains that he will "suffer significant loss" when he attempts to sell the vehicle because "the reputation of these vehicles has been impaired by now-public research establishing that these vehicles suffer from the oil consumption defect." [*Id.*].

Mr. Williams has now filed suit in this Court against BMW, alleging claims for breach of warranty under the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.* (Count One); breach of implied warranty under the Magnuson-Moss Warranty Act and under Tennessee Code Annotated § 47-2-314 (Count Two); breach of express warranty under Tennessee Code

---

[2] Mr. Williams alleges that "[s]ome owners and enthusiasts blame the oil consumption on BMW's decision to place the N63's twin-turbochargers between the cylinder heads, and inside of the engine V, rather than outside of the engine V, away from sensitive components, where turbochargers are typically located." [*Id.* ¶ 37].

[3] Mr. Williams alleges that when he "presented his car to a BMW dealer," BMW "claimed there was nothing wrong with [the] N63 engine in [his] car and having to add quarts of oil *in between* oil changes was 'normal.'" [*Id.* ¶ 3].

Annotated § 47-2-313 (Count Three); violation of the Tennessee Consumer Protection Act ("TCPA"), Tennessee Code Annotated § 47-18-101 *et seq.* (Count IV); and a common-law claim for fraudulent concealment (Count Five). BMW now moves for the dismissal of Counts II, IV, and V under Federal Rule of Civil Procedure 12(b)(6). Having carefully reviewed and considered BMW's arguments for dismissal and Mr. Williams' response to those arguments, the Court is now prepared to rule on BMW's motion.

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 8(a)(2), "[a] pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the plaintiff's complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the plaintiff pleads facts that create a reasonable inference that the defendant is liable for the alleged conduct in the complaint. *Id.*

When considering a motion to dismiss under Rule 12(b)(6), a court accepts the allegations in the complaint as true and construes them in a light most favorable to the plaintiff. *Mixon v. Ohio*, 193 F.3d 389, 400 (6th Cir. 1999). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," however. *Iqbal*, 556 U.S. at 678. A plaintiff's allegations must consist of more than "labels," "conclusions," and "formulaic recitation[s] of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (citation omitted);

*see Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." (citation omitted)).

### III. ANALYSIS

BMW argues that Mr. Williams' claim under the Magnuson-Moss Warranty Act fails because he is not in privity of contract with BMW, that his claim under the TCPA fails because he has not alleged that BMW made any misrepresentation before he purchased the vehicle, and that his claim for fraudulent concealment fails because the economic loss rule bars it. [Def.'s Mem. at 1, 4–10]. BMW also contends that Mr. Williams' complaint is "impermissibly long and complex, violating the edict of Rule 8(a) . . . that a Complaint be 'short and plain.'" [*Id.* at 1]. In response, Mr. Williams counters BMW's arguments by directing the Court's attention to various allegations in his complaint—allegations that he believes are factually sufficient to support his claims. [Pl.'s Resp. at 4–9].

#### A. Count Two: Breach of Implied Warranty under the Magnuson-Moss Warranty Act

The Magnuson-Moss Warranty Act provides that "a consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with . . . a written warranty, implied warranty, or service contract, may bring suit for damages" in federal district court. 15 U.S.C. § 2310(d)(1)(B). "[T]he Magnuson-Moss Warranty Act does not describe the elements of a breach of implied warranty claim. Instead, the Act permits 'consumers to enforce written and implied warranties in federal court, [by] borrowing state law causes of action'" for breach of implied warranty. *Pearson & Son Excavating, Co. v. W. Recreational Vehicles, Inc.*, No. 03-40246, 2007 WL 836603, at *2 (E.D. Mich. Mar. 14, 2007) (quoting *Schimmer v. Jaguar Cars,*

4

*Inc.*, 384 F.3d 402, 405 (7th Cir. 2004))); *see In re Anheuser-Busch Beer Labeling Mktg. & Sales Practices Litig.*, 644 F. App'x 515, 516 (6th Cir. 2016) (stating that the Magnuson-Moss Warranty Act "creates a federal cause of action for the violation of a warranty implied by state law" (citations omitted)); *Farley v. Country Coach, Inc.*, 403 F. App'x 973, 975 n.1 (6th Cir. 2010) (noting that "the district court granted [the defendant's] motion in limine requesting an Order stating that Plaintiff is only entitled to relief under the Magnuson–Moss Warranty Act if Plaintiff is successful in proving a breach of state warranty law claim" and affirming the district court's judgment (internal quotation mark omitted)).

Although BMW states that, "[t]o [its] knowledge, no Tennessee court has addressed the need for privity in a Magnuson-Moss breach of implied warranty action," it asserts that "[t]he overwhelming majority of courts in other states that have addressed the issue . . . have found that if state law requires privity to maintain a breach of implied warranty action, the Magnuson-Moss Act also requires privity." [Def.'s Mem. at 4–5]. And Tennessee law, BMW points out, requires contractual privity to exist between a plaintiff and a defendant when, as in this case, the alleged damages are for purely economic losses. [*Id.* at 6 (citing *Messer Griesheim Indus. v. Cryotech of Kingsport, Inc.*, 131 S.W.3d 457, 463 (Tenn. Ct. App. 2003))]. It argues that "the Court should dismiss Count II of Mr. Williams' Complaint because he does not allege that he is in privity of contract with BMW." [*Id.*].

But Mr. Williams, on multiple occasions throughout his complaint, clearly alleges facts from which the Court can discern he was in contractual privity with BMW:

> 24. Specifically, under its New Vehicle Limited Warranty, defendant promised to repair or replace components found to be defective in material or workmanship during the 4-year/50,000-mile following such Vehicle delivery to consumer.

5

> . . . .
>
> 26. In its New Vehicle Limited Warranty, BMW states:
>
>> Warrantor
>>
>> BMW of North America, LLC (BMW NA) warrants during the Warranty Period the 2014 U.S.-specification BMW vehicles distributed by BMW NA or sold through the BMW NA European Delivery Program against defects in the materials or workmanship to the first retail purchaser, and each subsequent purchaser.

[Compl. ¶¶ 24, 26]. BMW's argument therefore fails, and it is not entitled to the dismissal of Count Two.

### B. Count Four: Violation of the TCPA

The TCPA forbids "[u]nfair or deceptive acts or practices affecting the conduct of any trade or commerce." Tenn. Code Ann. § 47–18–104(a). To state a claim under the TCPA, Mr. Williams must allege "(1) that the defendant engaged in an unfair or deceptive act or practice declared unlawful by the TCPA and (2) that the defendant's conduct caused an 'ascertainable loss of money or property, real, personal, or mixed, or any other article, commodity, or thing of value wherever situated.'" *Hanson v. J.C. Hobbs Co.*, No. W2011–02523–COA–R3–CV, 2012 WL 5873582, at *9 (Tenn. Ct. App. Nov. 21, 2012) (quoting *id.* § 47–18–109(a)(1)). Mr. Williams alleges that BMW violated five subsections of the TCPA, [Compl. ¶ 118], all of which require a misrepresentation:

> (5) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have or that a person has a sponsorship approval, status, affiliation or connection that such person does not have;
>
> . . . .

6

(7) Representing that goods or services are of a particular standard, quality or grade, or that goods are of a particular style or model, if they are of another;

. . . .

(19) Representing that a guarantee or warranty confers or involves rights or remedies which it does not have or involve; provided, that nothing in this subdivision (b)(19) shall be construed to alter the implied warranty of merchantability as defined in § 47-2-314;

. . . .

(21) Using statements or illustrations in any advertisement which create a false impression of the grade, quality, quantity, make, value, age, size, color, usability or origin of the goods or services offered, or which may otherwise misrepresent the goods or services in such a manner that later, on disclosure of the true facts, there is a likelihood that the buyer may be switched from the advertised goods or services to other goods or services;

. . . .

(23) Representing in any advertisement a false impression that the offer of goods has been occasioned by a financial or natural catastrophe when such is not true, or misrepresenting the former price, savings, quality or ownership of any goods sold.

Tenn. Code Ann. § 47–18–104(b)(5), (7), (19), (21), (23).

In pursuing dismissal of Mr. Williams' claim under the TCPA, BMW argues that his claim fails because "Mr. Williams identifies no statement or representation that BMW NA made to him about the oil consumption of the N63's engine before the he purchased the 750Li other than representations in express warranties." [Def.'s Mem. at 7]. But BMW gives short shrift to § 47–18–104(19)'s plain language, which clearly states that a misrepresentation occurs when a "warranty confers or involves rights or remedies which it does not have." Mr. Williams states a plausible claim under § 47–18–104(19) because he alleges that BMW warranted that it would repair or replace his vehicle's engine if defective but has refused to do so. [Compl. ¶¶ 3, 18, 23, 24, 26].

7

To the extent that BMW contends that this allegation is insufficient to show that it committed a deceptive act or practice under the TCPA, the Court declines to address that contention here at the pleading stage. *Compare Poole v. Union Planters Bank, N.A.*, 337 S.W.3d 771, 786 (Tenn. Ct. App. 2010). ("[W]hether a defendant has committed unfair or deceptive acts is a question of fact." (citations omitted)), *with Ecclesiastical Order of the ISM of AM, Inc. v. IRS*, 725 F.2d 398, 403 (6th Cir. 1984) (Jones, J., concurring in part and dissenting in part) ("[T]he court is not to resolve issues of fact in the context of a motion to dismiss[.]"), *and Mike Vaughn Custom Sports, Inc. v. Piku*, 15 F. Supp. 3d 735, 753 (E.D. Mich. 2014) ("The Court cannot resolve questions of fact on a motion to dismiss." (citations omitted)).

BMW, however, also contends that Mr. Williams has failed to plead sufficient facts to support a claim under § 47–18–104(b)(21) and § 47–18–104(b)(23), specifically. [Def.'s Mem. at 7]. Each of these subsections requires a misrepresentation to occur through an advertisement, *see* Tenn. Code Ann. § 47–18–104(b)(21), (23), and BMW correctly argues that Mr. Williams "does not allege in his Complaint anything about advertisements, let alone that he read and relied on some advertisement that BMW NA disseminated," [Def.'s Mem. at 7]. The Court will therefore dismiss Mr. Williams' claims under § 47–18–104(b)(21) and § 47–18–104(b)(23), specifically, but it will permit his claim under the TCPA to remain intact in all other respects.[4]

**C. Count Five: Fraudulent Concealment**

To state a claim for fraudulent concealment under Tennessee law, Mr. Williams must plead "(1) an affirmative act by [BMW] to conceal the cause of action or the failure to disclose

---

[4] Again, Mr. Williams has stated a plausible claim under § 47–18–104(19) but not under under § 47–18–104(b)(21) and § 47–18–104(b)(23). As for his claims under § 47–18–104(b)(5) and (7), BMW does not specifically request their dismissal.

8

material facts despite a duty to speak; (2) that [he] could not have discovered the cause of action despite exercising reasonable care and diligence; (3) [BMW] must be aware of the wrong; [and] (4) [BMW] conceal[ed] . . . material information." *Estate of Morris v. Morris*, 329 S.W.3d 779, 784 (Tenn. Ct. App. 2009) (internal quotation marks omitted) (quoting *Shadrick v. Coker*, 963 S.W.2d 726, 735 (Tenn.1998))). BMW argues that the economic loss rule, "a judicially created principle that reflects an attempt to maintain separation between contract law and tort law by barring recovery in tort for purely economic loss," *Lincoln Gen. Ins. Co. v. Detroit Diesel Corp.*, 293 S.W.3d 487, 488 (Tenn. 2009) (citation omitted), bars Mr. Williams' claim for fraudulent concealment, [Def.'s Mem. at 8].

The general idea behind the economic loss rule is simple enough: parties to a contract should not be free to pursue remedies in tort just because they later turn out to be unhappy with the contractual remedies that they negotiated. But the rule has "confounded courts and counsel for decades." Eddward P. Ballinger, Jr. & Samuel A. Thumma, *The History, Evolution and Implications of Arizona's Economic Loss Rule*, 34 Ariz. St. L. J. 491, 491 (2002); *see, e.g.*, *City of Malvern v. Jenkins*, 425 S.W.3d 711, 716 (Ark. 2013) ("[T]he difference between an action in contract and one in tort is not exact[.]"); *Chatterjee v. Glenn*, No. 931912, 1994 WL 879735, at *3 (Mass. Sup. Ct. Jan. 28, 1994) ("[I]t is not clear that there is any meaningful difference between a tort claim for malpractice and a third-party-beneficiary claim for breach of contract. In the first place, all actions for legal malpractice are rooted in claims for breach of contract." (citation omitted)); *Paul v. Escambia Cnty. Hosp. Bd.*, 218 So. 2d 817, 821 (Ala. 1969) (stating that the distinction between a tort claim and a contract claim is a "close question"); *see also E. River Steamship Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 868–72 (1986) (observing

9

that federal courts and state courts have adopted "minority," "intermediate," and "majority" approaches to the economic loss rule); *Milan Supply Chain Solutions Inc. v. Navistar Inc.*, No. W2018-00084-COA-R3-CV, 2019 WL 3812483, at *4 (Tenn. Ct. App. Aug. 14, 2019) ("The conceptual simplicity of the doctrine notwithstanding, a review of case law across the country shows a lack of uniformity in the approaches taken, even prompting one judge to note that the economic loss rule has become a 'confusing morass.'" (internal citation and citation omitted)).

Although the economic loss rule is traceable to case law that predates Abraham Lincoln's presidency, *see* Ballinger, Jr. & Thumma, *The History, Evolution and Implications of Arizona's Economic Loss Rule*, 34 Ariz. St. L. J. at 492–93, the Tennessee Supreme Court did not enshrine it into common law until relatively recently, formally adopting the rule for the first time in 2009. *See Lincoln Gen.*, 293 S.W.3d at 488 ("This certified question presupposes that Tennessee recognizes the economic loss doctrine[.]"); *City of Franklin v. W.L. Hailey & Co.*, No. M2018-01535-COA-R3-CV, 2019 WL 5607796, at *6 (Tenn. Ct. App. Oct. 30, 2019) ("The Tennessee Supreme Court . . . formally adopt[ed] the economic loss doctrine in *Lincoln General*." (citing *id.* at 489)). In doing so, the Tennessee Supreme Court espoused the United States Supreme Court's holding in *East River Steamship Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 866 (1986).

In *East River*, the Supreme Court observed that without a boundary between tort law and contract law, "contract law would drown in a sea of tort." *Id.* at 866. So, "preserving a proper role for the law of warranty," *id.* at 868 (citation omitted), the Supreme Court fashioned a bright-line rule that prohibits a plaintiff from recovering in tort when a product damages itself without causing personal injury or other property damage, *id.* at 871–75. "When a product

10

injures only itself," the Supreme Court reasoned, "the reasons for imposing a tort duty are weak and those for leaving the party to its contractual remedies are strong." *Id.* at 866. In other words, the risk of a defective product is one that parties are free to account for in their contractual negotiations—i.e., through a warranty.

Like the Supreme Court's version of the economic loss rule, Tennessee's version applies to, and precludes, tort claims for purely economic damages "when a defective product damages itself without causing personal injury or damage to other property." *Lincoln Gen*, 293 S.W.3d at 489. But before 2009, Tennessee's economic loss rule was verging on a protean doctrine, in that lower courts not only applied it to cases not involving defective products but also recognized exceptions to it. *See Acuity v. McGhee Eng'g, Inc.*, 297 S.W.3d 718, 734 (Tenn. Ct. App. 2008) ("Tennessee law recognizes an exception to the economic loss doctrine: despite the absence of privity, a plaintiff may maintain an action for purely economic loss based upon negligent supervision or negligent misrepresentation." (citing *John Martin Co. v. Morse/Diesel, Inc.*, 819 S.W.2d 428, 435 (Tenn. 1991))); *see also City of Franklin*, 2019 WL 5607796 at *6 (stating that, before 2009, "Tennessee . . . appears to have considered two separate rules," one that is applicable to parties in contractual privity and one that is applicable to products-liability cases); Ballinger, Jr. & Thumma, *The History, Evolution and Implications of Arizona's Economic Loss Rule*, 34 Ariz. St. L. J. at 494 (noting that some states treat contractual privity as a requirement for the recovery of economic losses in a negligence action, whereas other states treat it as a bar to recovery (footnote omitted)). Today, Tennessee courts continue to labor over the scope of the economic loss rule, as attorneys continue to push for exceptions to it. *See City of Franklin*, 2019 WL 5607796 at at *3–16 (considering whether an exception exists to the economic loss rule for

11

claims of negligent misrepresentation); *see Milan Supply Chain*, 2019 WL 3812483 at *3 ("The issue here . . . is whether some type of exception to the doctrine exists for fraud claims.").

Here in this case, the question of whether an exception exists to Tennessee's economic loss rule for a claim of fraudulent concealment is, according to BMW, one of first impression. *See* [Def.'s Mem. at 8 n.2]. When addressing an issue of first impression under Tennessee law, this Court essentially must attempt to place itself in the shoes of the Tennessee Supreme Court by "predict[ing] how th[at] court would rule." *Berrington v. Wal-Mart Stores, Inc.*, 696 F.3d 604, 608 (6th Cir. 2012) (quotation omitted). "When existing state precedents leave a federal court in doubt about what view the state's highest court would take on an issue of first impression, it is appropriate to examine the views of the courts in other jurisdictions." *Travelers Ins. Co. v. Burchett*, 841 F.2d 155, 158 (6th Cir. 1988) (Merritt, J., dissenting) (citing *Bailey v. V & O Press Co.*, 770 F.2d 601, 604 (6th Cir.1985))). "The Federal courts," however, "should be 'extremely cautious about adopting substantive innovation in state law." *Berrington*, 696 F.3d at 608 (internal quotation marks and quotation omitted).

BMW has provided the Court with little if any guidance to aid it in deciding how the Tennessee Supreme Court would rule in this case. Instead, BMW, in pursuing dismissal of Mr. Williams' claim for fraudulent concealment, repeatedly cites the Tennessee Products Liability Act, Tennessee Code Annotated § 29-28-101 *et seq*. [Def.'s Mem. at 8]. In doing so, BMW appears to argue that Mr. Williams' claim for fraudulent concealment is in actuality a claim under the Tennessee Products Liability Act, [*id.*], which authorizes "actions brought for or on account of personal injury, death or property damage," Tenn. Code Ann. § 29-28-102(6). The Tennessee Supreme Court, BMW notes, defined the term "property damage" in § 29-28-102(6)

12

"to mean damage to property other than the defective product." [Def.'s Mem. at 8 (quoting *Lincoln Gen.*, 293 S.W.3d at 492)]. BMW maintains that "Mr. Williams does not allege any personal injury or damage to any property other than the 750Li," and "[t]hus, he may not recover in tort." [*Id.*].

The Court, however, is without license to restyle Mr. Williams' claim for fraudulent concealment as a claim under the Tennessee Products Liability Act, no matter how closely it might resemble one. *See Energy Conversion Devices Liquidation Tr. v. Trina Solar Ltd.*, 833 F.3d 680, 688 (6th Cir. 2016) ("As the master of the complaint, the plaintiff may decide what claims to bring and how to prove them."). While, true, the Tennessee Supreme Court in *Lincoln General* acknowledged that its newly minted version of the economic loss rule is consistent with the Tennessee Products Liability Act, *Lincoln Gen.*, 293 S.W.3d at 491–92, this acknowledgment hardly seems of consequence to a claim for fraudulent concealment. Also, BMW's argument suffers from anachronistic flaws: BMW cites cases that came before the Tennessee Supreme Court's decision in *Lincoln General*. *See City of Franklin*, 2019 WL 5607796 at *11 ("As an initial matter, we dispense with those cases decided prior to *Lincoln General*, as the Tennessee Supreme Court had yet to adopt an economic loss rule where a defective product injures only itself." (citations omitted)).

If the Court were to rely on precedent that predates *Lincoln General*, as BMW invites it to do, it might be inclined to rule that Mr. Williams' claim *is* in fact sufficient to overcome the economic loss rule. *Cf. John Martin Co. v. Morse/Diesel, Inc.*, 819 S.W.2d 428, 431, 435–36 (Tenn. 1991) (concluding that the plaintiff could recover purely economic losses for a claim involving his reliance on the defendant's "misrepresentation in the performance of his contracted

13

service"). In any case, the Court has no need to decide whether the economic loss rule bars claims for fraudulent concealment because BMW's argument for dismissal is way off the mark, and the Court therefore expresses no opinion as to whether the economic loss rule bars Mr. Williams' claim. This claim, along with Mr. Williams' other claims, will have to play out in discovery.

### D. Violation of Rule 8(a)(2)

Lastly, BMW asserts that Mr. Williams' complaint is faulty under Rule 8(a)(2) because it is "neither short nor plain." [Def.'s Mem. at 9]. But this argument is unpersuasive, if not disingenuous, because the complaint was plain enough to allow BMW to prepare a motion to dismiss in response to it. Surely a request for a more definite statement rather than dismissal of Mr. Williams' claims will suffice.

### IV. CONCLUSION

Mr. Williams has alleged sufficient facts to support his claims in some respects but not others. BMW's motion to dismiss [Doc. 12] is **GRANTED** only to the extent that it requests dismissal of Mr. Williams' claims under § 47–18–104(b)(21) and § 47–18–104(b)(23) of the TCPA. BMW's motion is **DENIED** in all other respects. BMW **SHALL** serve a responsive pleading within twenty-one days of this Order's date .

So ordered.

ENTER:

s/J. RONNIE GREER
UNITED STATES DISTRICT JUDGE

14